UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Criminal Case No. 00-cr-00531-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2. RUDY CABRERA SABLAN

      Defendant.

_____

**ORDER**
_____

THIS MATTER came before the Court on a hearing on pending motions on

October 23, 2007.  This Order addresses my rulings on the motions addressed at that

hearing.

I.      Rudy Sablan's Motions for Discovery of *Brady* Material

Defendant's Motions for Discovery of *Brady* Material seek mental health records

of William Sablan pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  William

Sablan previously objected to disclosure of these documents when the case was still

pending as to him, but indicated that the objections may be withdrawn after his case

was concluded.  Since that case was terminated earlier this year, the Case

Management Order entered in this case in September 2007 ordered the Government to

confer with William Sablan's counsel and determine to what extent they still objected to

disclosure of such evidence.  The Government complied with this Order through the

filing of a Status Report on October 5, 2007.

Based on the Status Report, I issued an Order on October 11, 2007, which granted in part and deferred in part Defendant's Motions for Discovery.  Specifically, I granted the motions to the extent that objections were withdrawn to disclosure of certain mental health records and ordered that the Government produce those documents to Defendant.  I deferred ruling on the motions to the extent William Sablan's counsel objected to disclosure of certain mental health records on the basis of work-product and/or psychotherapist-patient privilege.  At the hearing on October 23, 2007, I heard argument from William Sablan's counsel on the issue of these objections and the asserted privilege.  I also heard the position of Defendant Rudy Sablan as to the need for these documents and the position of the Government.  William Sablan's counsel was ordered to resubmit to the Court on an *ex parte* basis the documents claimed as privilege with appropriate redactions by October 29, 2007.

Upon resubmission of these documents, William Sablan's counsel indicated in a letter dated October 25, 2007, that they withdrew the privilege as to all documents. Accordingly, Defendant's Motions for Discovery of *Brady* Material are now granted in their entirety.  The Government is ordered to produce to Defendant all documents in its possession that were previously claimed as privileged by William Sablan.  The Court will produce to the parties the letters marked as "BLANK" which were not in the Government's possession and which were provided to the Court by William Sablan's counsel.  The Court will also produce the attachments to those letters.   These documents will be available for the parties to pick up in my Chambers.  Counsel should contact my Chambers at (303) 844-2170 to arrange a time to obtain these documents.

II.     Rudy Sablan's Motion to Reconsider Court's Ruling on Relesae of Juror Contact Information

I now turn to Defendant's Motion to Reconsider Court's Ruling on Release of Juror Contact Information.  This motion seeks a reconsideration of my previous ruling which denied Defendant's Motion to Release Juror Contact Information.  Defendant argues that D.C.COLO.LCivR 47.1 should not be used to prevent jurors from their right to contact counsel if they choose to do so.  He requests that I mail to jurors and alternate jurors from William Sablan's trial a proposed letter that tells them they have the option to contact counsel for Rudy Sablan or the Government if they desire.

Having carefully considered the motion, I agree that Local Rule 47.1 does not prohibit jurors from voluntarily contacting counsel if they so choose.  However, I find, for the reasons stated at the hearing and in this Order, that the relief requested in the motion is not appropriate.  First, I find that significant time has elapsed since the trial and that it is unlikely the jurors will have any detailed recollection of the evidence.  Thus, the motion is untimely.  Second, I find that Defendant has not stated a compelling reason why he needs to speak to the jurors from William Sablan's trial or what information he could glean from the jurors that would be of assistance to this case.

Finally, I find that the jurors in that case have a valid belief based on the Court's representations after the verdict was returned that their case is over and that they will not be contacted regarding their service as jurors.  A letter sent to the jurors at this point in time regarding their jury service, even if sent by the Court, could potentially be

confusing and/or misleading to them.  Accordingly, Rudy Sablan's Motion to

Reconsider Court's Ruling on Release of Juror Contact Information is denied.

III.    Rudy Sablan's Motion to Strike Government's Notice of Intent to Seek Death

      A.    Whether the Heinous or Depraved Statutory Aggravating Factor Should
           Be Stricken against Defendant

This motion first argues that the only remaining statutory aggravating factor in

the Third Amended Notice of Intent to Seek the Death Penalty for Rudy Cabrera Sablan

(the "NOI") should be stricken and this case should proceed as a non-capital case.

The statutory aggravating factor asserts that Defendant committed the offense in an

especially heinous or depraved manner in that it involved serious physical abuse to the

victim.  NOI at 3 (citing 18 U.S.C. § 3592(c)(6)).

It is argued that the focus must be on the actions of Rudy Sablan, not William.

The only acts of Rudy Sablan alleged in the NOI as to this aggravating factor are

"enjoyment of the killing evidenced by celebratory shouts, offers of body parts of the

victim to other inmates and appearing to bite one of the removed organs constitutes

relishing the crime . . . ."  *Id.*  Defendant asserts that the Government cannot rely on

evidence of "enjoyment of the killing" or these other acts as a basis for the aggravating

factor.  Instead, Rudy Sablan must have caused serious physical abuse of the victim.

The evidence in this case, according to Defendant, shows that the serious physical

abuse—the cutting open of Mr. Estrella's abdomen—was done by William Sablan, not

by Rudy Sablan.  Thus, it is argued that this aggravating factor should be stricken as to

Rudy.  Alternatively, it is argued that the Court should conclude that the evidence about

William Sablan's actions is likely to mislead the jury and cause unfair prejudice, and

that Defendant's actions in the aftermath are insufficiently relevant and reliable.  Thus,

he argues that this evidence should be excluded pursuant to 18 U.S.C. § 3593(c).

Turning to my analysis, I first note that by Order of July 6, 2006, I denied without

prejudice a previous motion by Defendant to strike the heinous or depraved

aggravating factor.  That Order noted that this aggravating factor requires the

Government to prove that the killing involved either torture or serious physical abuse to

the victim.  *See* July 6, 2006 Order at 18 (citing *United States v. Hall*, 152 F.3d 381,

414 (5th Cir. 1998)).  The Order also noted authority which holds that serious physical

abuse (unlike torture) may be inflicted either before *or after* death and does not require

that the victim be conscious of the abuse at the time it was inflicted.  *Id.* (citing

*Richmond v. Lewis*, 506 U.S. 40 (1992); *United States v. Chanthadara*, 230 F.3d 1237,

1261-62 (10th Cir. 2000); *United States v. Jones*, 132 F.3d 232, 250 (5th Cir. 1998)).

As to Defendant's prior motion to strike, I ruled that the Court "must hear the

evidence in context to determine if this aggravating factor is proper as to Rudy Sablan.

In other words, I am not prepared as a matter of law to rule at this time that there is no

evidence that could support this aggravating factor."  July 6, 2006 Order at 19.  I also

held, however, that this aggravating factor cannot be presented as to Rudy Sablan

unless the evidence shows it is appropriate to him.  *Id.*

Now, of course, William Sablan's trial has been completed.  Defendant is correct

that the Government presented evidence at that trial that implicated William, not Rudy,

in the act of cutting open Mr. Estrella's abdomen.  It also presented evidence that

William Sablan admitted that he killed Mr. Estrella, not Rudy.  Given that backdrop, I now need to decide whether the Government has shown that it can present sufficient evidence that supports the existence of the statutory aggravating factor as to Rudy Sablan, *i.e.*, that Rudy Sablan committed the offense at issue in an especially heinous or depraved manner in that it involved serious physical abuse to Mr. Estrella.  If the Government cannot present such evidence, the heinous or depraved aggravating factor would need to be stricken and Defendant would no longer be death eligible.

I find that Defendant's motion to strike the heinous or depraved statutory aggravating factor must again be denied without prejudice.  The Government has indicated sufficient evidence that it may present on this issue to warrant the aggravating factor being given to the jury.  Specifically, while I agree with Defendant that this aggravating factor must focus on his actions, as compared to William Sablan's actions, this does not mean that Defendant's actions under the Government's theory of the evidence could not also be construed by a jury as sufficient to meet this statutory aggravating factor.  *See United States v. Hall*, 152 F.3d 381, 415 (5th Cir. 1998) (rejecting an argument that the instructions invited the jury to consider the actions of Hall's coconspirators, when the heinous or depraved aggravating factor itself focused on the actions of Hall) (cited with approval in *United States v. Chanthadara*, 132 F.3d 1237 (10th Cir. 2000)).

The first issue is whether there is evidence that Defendant committed the offense, *i.e.*, the murder of Joey Estrella, as required by the first part of this aggravating factor under 18 U.S.C. § 3592(c)(6) ("*The defendant committed the offense* in an

especially heinous, cruel, or depraved manner . . . ").[1]  While there certainly was

evidence presented at William Sablan's trial that he killed Joey Estrella, as compared

to Rudy Sablan, the Government has cited testimony by Dr. Baden that, to a

reasonable degree of medical probability, the killing of Joey Estrella was caused by

*both* asphyxia by ligature strangulation as well as bleeding from the multiple cuttings on

Estrella's neck.  (Trial Transcript ["Tr."] at 4629, lines 2-7).  There was also evidence

that a witness (Arthur Peck) saw *Rudy*, not William, strangling Mr. Estrella with

headphones.  (Tr. at 3907-3908, 3296-27.)  While William Sablan made admissions

that he choked Mr. Estrella with his hands, Dr. Baden testified that the marks on Mr.

Estrella's neck  were caused by a ligature as opposed to someone's hands.  (Tr. at

4604-05.)  The ligature marks are more consistent with the headphones that Rudy was

alleged to have used to strangle Mr. Estrella with.  Given the conflicting evidence, this

is obviously an issue for the jury.

        The next issue is whether Rudy Sablan committed the murder "*in an especially*

*heinous or depraved manner in that it involved serious physical abuse to the victim*."

Courts hold that the term "heinous" requires that the killing be accompanied by

additional acts of serious physical abuse as set apart from other killings.  *See Hall*, 152

F.3d at 414; *Chanthdara*, 230 F.3d at 1261-62; *see also* Ex. A to Government's

Response (jury instruction given in William Sablan's trial).  "Depraved" requires that the

---

        [1]  While the Government cites to *United States v. Johnson*, 495 F.3d 951, 975 (8th Cir. 2007),
which indicated that this statutory aggravating factor could apply to a complicitor who did not actually
commit the murders (as she did not actually pull the trigger), I am not convinced that *Johnson* is
applicable.  In this case, the offense at issue which gives rise to the capital offense is first degree murder
of Joey Estrella, which both Rudy and William Sablan are alleged to have committed.  The statutory
aggravating factor requires that *Rudy* committed this offense in an especially heinous or depraved way.

defendant "relished the killing or showed indifference to the suffering of the victim, as evidence by . . . serious physical abuse." *Id.* As indicated previously, "serious physical abuse" can be inflicted before and after death and requires that the defendant must have specifically intended the abuse apart from the killing. *Id.*

In this case, while Defendant's motion limits the serious physical abuse in this case to the cutting open of Mr. Estrella's abdomen, which the evidence shows may have been done by William Sablan, I agree with the Government that there is also evidence of "serious physical abuse" by Rudy Sablan that may meet this statutory aggravator. Specifically, evidence was presented at William Sablan's trial that Rudy Sablan was seen to have been violently strangling Mr. Estrella and, in so doing, the jury could find that he was relishing the killing (if this strangulation was a cause of death) or showing indifference to the suffering of the victim. Further, as to the requirement that Rudy Sablan must have specifically intended the serious physical abuse "apart from the killing", there is evidence that Rudy (as well as William) stuck their hands into the body cavity, further tearing the wound to the abdomen, pulled out organs, and "relished" the killing (as shown by celebratory shouts by Defendant Rudy Sablan).[2] This abuse, while inflicted after death, may be sufficient to satisfy this statutory aggravating factor.

Accordingly, I find that the Government has shown that it can present evidence in support of this statutory aggravating factor as to Rudy Sablan. The motion to strike this aggravating factor is thus denied without prejudice, subject to the evidence at trial.

---

[2] (Tr. at 4622-23, 3817; October Motions Hearing Transcripts at 1190-94, 1669, 1692-94.)

Obviously, if the Government does not present evidence that supports the existence of this statutory aggravating factor as to Defendant at trial, the Defendant can ask for appropriate relief at that time.

I also reject Defendant's argument that I should exclude as unduly prejudicial the actions of William and/or Rudy Sablan that implicate this statutory aggravating factor. The Federal Death Penalty Act ["FDPA"] provides in relevant part that information about aggravating or mitigating factors "is admissible regardless of its admissibility under the rules governing admission of evidence at criminal trials except that information may be excluded if its probative value is outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 18 U.S.C. § 3593(c).

In this case, I find that evidence about both William and Rudy Sablan's actions with respect to the offense at issue are intertwined and must be heard by the jury as a whole for them to be able to decide in Defendant's trial whether he committed the offense at issue. Defendant has not shown that William Sablan's actions vis-à-vis his are unduly prejudicial, and I reject his argument that consideration of this evidence would arouse passion and prejudice in the minds of the jurors, confuse the issues, or unfairly distract them from the individualized consideration of Rudy Sablan's actions and culpability. Further, the severance of the trials of Defendants William and Rudy Sablan should be sufficient to cure any potential spillover effect and to ensure that the jury is focused on Defendant's individual culpability. Thus, I reject Defendant's arguments that evidence should be excluded under § 3593(c).

Finally, I briefly address Defendant's argument that the Government cannot switch theories at trial and now argue that Rudy Sablan committed acts that William is alleged to have committed at his trial.  Defendant argues that this would raise a due process concern under the Eighth Amendment, citing *Smith v. Groose*, 205 F.3d 1045 (8th Cir. 2000).  In *Groose*, the Eighth Circuit stated, "We do not hold that prosecutors must present precisely the same evidence and theories in trials for different defendants.  Rather, we hold only that the use of inherently factually contradictory theories violates the principles of due process."  *Id.* at 1052.

I first find that this is not the time to decide this issue, as it is premature.  I do note, however, that an argument by the Government that Rudy Sablan killed Mr. Estrella at Defendant's trial does not appear to be inherently contradictory to what was presented at William Sablan's trial.  As previously indicated, evidence was presented at trial that Rudy Sablan was seen to be strangling Mr. Estrella and that this strangulation may have been a cause of death as well as the cutting.  Thus, there was evidence at that trial that Rudy, as well as William, may have killed Mr. Estrella.  To the extent that the Government may raise an argument that *is* inherently contradictory to what was argued at William Sablan's trial, Defendant may re-raise the issue at this time.

B.    Whether the NOI Should Be Stricken as Its Application to Rudy Sablan Is Arbitrary and Capricious

Defendant also argues that the NOI should be stricken on the basis that the Government's decision to continue to seek death in light of William Sablan's sentence

of a life sentence is arbitrary and capricious and violates the Fifth and Eighth

Amendments.  He cites *United States v. Littrell*, 478 F. Supp. 2d 1179 (C.D. Cal. 2007),

a case where the NOI was stricken on that basis.

The *Littrell* case involved Gary Littrell, one of 40 defendants charged in the

Aryan Brotherhood capital murder cases.  The two highest defendants in the

indictment, Mr. Mills and Mr. Bingham, were the subjects of a four month trial in which

they were found guilty of first-degree murder.  The jury was unable in the penalty phase

to reach unanimous verdicts and Mr. Mills and Mr. Bingham were sentenced to life

imprisonment.  The Government withdrew death penalty NOI's for other defendants but

continued to seek the death penalty against Gary Littrell, even in the face of life

sentence for the leaders.  Defendant argues that, as here, the Department of Justice

claimed to "reconsider" its decision but maintained the death penalty authorization.

In striking the Government's NOI, Judge Carney stated, "no rational decision-

maker could conclude that Gary Joe Littrell's conduct was so reprehensible, and his

moral culpability so great, that he should face execution when the leaders of the

organization, the men who ordered him to kill, and several men who have committed

identical crimes to Mr. Littrell in furtherance of the Aryan Brotherhood will not face

similar punishment."  *Littrell*, 478 F. Supp. 2d at 1192.  He concluded, "when all

relevant facts and circumstances are considered, it is clear that no rational decision

maker would continue to seek to execute Gary Joe Littrell."  *Id.*

Defendant argues that the circumstances of the *Littrell* case are strikingly similar

to the situation in this case, and that I should apply its rationale in striking the NOI in

this case.  I deny the motion to strike the NOI on this basis.  *Littrell* appears to be the

only case that has stricken a NOI on the basis that the Government's decision not to

withdraw it after the more culpable defendants were given a life sentence was arbitrary

and capricious.  I decline to follow *Littrell*.

First, as the Government points out, a prosecutor has the discretion to decide

charging issues in the absence of an improper motive (such as charging based on

race, religion or another arbitrary classification), and such discretion is not normally

subject to review.  *See McClesky v. Kemp*, 481 U.S. 279, 296 (1987); *Wayte v. United*

*States*, 470 U.S. 598, 607-08 (1984).  Defendant has not alleged an improper motive as

identified by those cases, nor has he provided a valid basis for review of the

Government's charging decisions in this case, including the NOI.

Second, courts have rejected challenges to the conviction and punishment by

death of arguably less culpable co-defendants (who are sentenced to death when more

culpable defendants have not been).  *Pulley v. Harris*, 465 U.S. 37, 50-51 (1984)

("there is. . . no basis in our cases for holding that comparative proportionality review. .

. is required in every case in which the death penalty is requested and the defendant

requests it").  Indeed, I noted in a previous Order that proportionality review is not

required in capital cases, and I rejected William and Rudy Sablan's challenges to the

nonstatutory aggravating factors without providing for proportionality review.  *See*

Order of April 18, 2006 Order, at 8-9.

If the conviction and punishment by death of a less culpable co-defendant does

not violate due process when a more culpable defendant receives a lesser punishment,

it seems fairly certain that there is not a due process violation merely to *seek* a death

penalty against an arguably less-culpable defendant.  This is particularly true as the

FDPA specifically allows a defendant in a capital case to present as a mitigating factor

that another defendant, equally culpable in the crime, will not be punished by death.

*See* 18 U.S.C. § 3592(a)(4); *see also United States v. Allen*, 247 F.3d 741, 760 (8th Cir.

2001) ("[w]e hold that the FDPA has sufficient safeguards. . . such that proportionality

review is not required in order for the FDPA to pass constitutional muster"), *vacated on

other grounds*, 536 U.S. 953 (2002); *accord United States v. Higgs*, 353 F.3d 281, 320-

21 (4th Cir. 2003); *United States v. Jones*, 132 F.3d 232, 240-41 (5th Cir. 1998), *aff'd*,

527 U.S. 373 (1999).

Accordingly, I decline to strike the NOI as arbitrary and capricious.  I also find

that Defendant has not shown a Fifth or Eight Amendment violation in connection with

the Government's decision not to withdraw the NOI in this case.

III.    CONCLUSION

Based on the foregoing, it is

ORDERED that Rudy Sablan's Motions for Discovery of *Brady* Material (docket

(# 1534 and 1660) are now **GRANTED IN THEIR ENTIRETY**.  The Government shall

produce to Defendant all documents in its possession that were previously claimed as

privileged.  The Court will produce to the parties the letters marked as "BLANK" which

were not in the Government's possession and which were provided to the Court by

William Sablan's counsel, as well as the attachments to those letters.  These

documents will be available for pick up by counsel in my Chambers.  It is

FURTHER ORDERED that Defendant Rudy Sablan's Motion to Reconsider

Court's Order Juror Release Information is **DENIED**.  Finally, it is

ORDERED that Rudy Sablan's Motion to Strike Government's Notice of Intent to

Seek Death is **DENIED**.

Dated:  November 16, 2007

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge