UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Criminal Case No. 00-cr-00531-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2. RUDY CABRERA SABLAN

      Defendant.

_____

**ORDER**
_____

DANIEL, Judge

I.     <u>INTRODUCTION</u>

     THIS MATTER came before the Court on a hearing on pending motions on

December 3 and 4, 2007.  This Order addresses my rulings on the motions and issues

addressed at that hearing.

II.    <u>ANALYSIS OF PENDING ISSUES</u>

     A.    <u>Preliminary Rulings</u>

     First, I deny as moot Defendant Rudy Sablan's Motion for Hearing Regarding

Procedure for Review and Release of William Sablan's Mental Health Material (R-49,

docket # 1671).  All mental health material of William Sablan has now been produced

to Defendant Rudy Sablan.

     I also deny as moot Defendant's Motion for Full Complement of Peremptory

Challenges (docket # 248).  This motion was filed when the cases of William Sablan

and Rudy Sablan were joined.  Now that the cases have been severed, Defendant

Rudy Sablan is entitled to the full complement of peremptory challenges under

FED. R. CRIM. P. 24.

The Government's Motion to Amend the Third Amended Notice of Intent to Seek

the Death Penalty for Rudy Sablan (docket # 2635) is granted.  This motion sought to

amend the Third Notice of Intent to Seek the Death Penalty for Rudy Sablan ("Third

NOI") to add the additional non-statutory aggravating factor of Victim Impact.  18 U.S.C.

§ 3593(a)(2) specifically allows for the inclusion of victim impact factors in a notice of

intent to seek the death penalty.  At the hearing, Defendant conceded that the

Government has the right to present victim impact and did not object to the motion.

The proposed Fourth Amended Notice of Intent to Seek the Death Penalty [hereinafter

referred to as "NOI"] was tendered to the Court and approved on December 4, 2007.  It

has since been filed.  The parties were directed to meet and confer regarding a proffer

to be submitted by the Government as to the victim impact evidence it seeks to admit.

B.    The Government's Motion to Reconsider *Crawford* Ruling

I now turn to the Government's Motion to Reconsider *Crawford* Ruling of

February 26, 2007 (docket # 2636).  This motion requests that I reconsider the ruling

that *Crawford v. Washington*, 541 U.S. 36 (2004), applies to the evidence presented at

a death penalty sentencing hearing.  (*See* Order, Feb. 26, 2007, at 12-22.)  That Order

noted that at the time of the ruling no circuit court had addressed the applicability of the

Confrontation Clause to the penalty stage post-*Crawford*. *Id.* at 14.

Since the Court's ruling, the Government argues that there has been a change in the state of the law on this subject based on the decision in *United States v. Fields,* 483 F.3d 313 (5th Cir. 2007), *cert. denied*, 128 S. Ct. 1065 (2008). *Fields* held that "the Confrontation Clause does not operate to bar the admission of testimony relevant only to a capital sentencing authority's selection decision." *Id.* at 326. In essence, the Fifth Circuit agreed with the reasoning of the court in *United States v. Jordan,* 357 F. Supp. 2d 889 (E.D. Va. 2005), that the Confrontation Clause post-*Crawford* applies only to the evidence presented during the eligibility phase of a capital sentencing hearing when statutory aggravating factors are considered, and not to the selection portion of the hearing when non-statutory factors are considered. In reaching its decision, the Fifth Circuit relied heavily on the Supreme Court's decision in *Williams v. New York*, 337 U.S. 241 (1949).

The Government also argues that at William Sablan's trial, the Court was disinclined to use a bifurcated proceeding at sentencing to accommodate different evidentiary requirements for eligibility versus selection. However, in any capital sentencing hearing for Rudy Sablan, the only statutory aggravating factor to be considered would be the "heinous or depraved" factor. The Government contends that all evidence relevant to that factor would likely have been presented during the guilt phase of the trial when the Confrontation Clause is applicable. The only new evidence presented during the penalty phase would concern nonstatutory factors.

Turning to my analysis, I deny the Government's motion to reconsider. First, I note that the *Fields* decision is not controlling or binding precedent in this Circuit.

Second, I find that the dissenting opinion in *Fields* is much more persuasive than the majority opinion, and adopt its rationale that the Confrontation Clause should be applicable at both stages of the penalty phase. Further, I agree with the thoughtful analysis of this topic in the law review article attached to Defendant's response. *See* Penny J. White, *"He Said, "She Said," and Issues of Life and Death: The Right to Confrontation at Capital Sentencing Proceedings,* 19 Regent U. L. Rev. 387 (2007).

In short, I believe that *Fields*' reliance on the *Williams* case is misplaced, as *Williams* has been significantly eroded by subsequent cases. The Supreme Court has made clear since *Williams* that death is different, that there is a need for reliable information at a capital sentencing, and that there is a need for confrontation when there is constitutionally significant factfinding on the part of the jury. *See, e.g.*, *United States v. Booker*, 543 U.S. 220 (2005); *Blakely v. Washington*, 542 U.S. 296 (2004); *Ring v. Arizona*, 536 U.S. 584 (2002); *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Lockett v. Ohio*, 438 U.S. 586, 604 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Under the FDPA, there are trial-like procedures that require specific findings by the jury, including not only the existence of the statutory aggravating factors (the eligibility phase) but also the existence of nonstatutory aggravating factors which must be proved beyond a reasonable doubt. I believe that these findings are constitutionally significant as they impact whether death is appropriate, *i.e.*, both the statutory and nonstatutory factors must be weighed by the jury against the mitigating factors to determine whether death is appropriate.

I further find that to change my prior holding and find that the Confrontation Clause is inapplicable at Rudy Sablan's penalty phase as to the nonstatutory aggravating factors when it was applicable at William Sablan's case based only on nonbinding authority from another Circuit seems patently unfair. Both William Sablan and Rudy Sablan raised *Crawford* issues when the case was consolidated. However, the *Crawford* ruling was decided after the cases had been severed. To deprive Rudy Sablan of the very serious constitutional protections of *Crawford* that were applied to William Sablan simply because of the timing of various rulings (including the severance ruling, the prior *Crawford* ruling and the *Fields* decision) seems arbitrary and unfair.

Finally, even if I were to reconsider my prior ruling and hold that *Crawford* and its Confrontation Clause protection is not applicable at the selection phase of the penalty proceeding, I still have a significant problem with the concept of bifurcating the eligibility and selection phases of the penalty proceeding. To explain, it appears undisputed that *Crawford* applies to the eligibility phase of the penalty stage, where the statutory aggravating factors must be found that make the defendant eligible for death. Unless the penalty proceeding is bifurcated, *Crawford* would arguably have to apply throughout the entire penalty proceeding so that the defendant's rights are adequately protected. The *Jordan* court overcame that problem by bifurcating the penalty phase into two stages, and applying the Confrontation Clause protections only to the first stage.

I continue to believe that bifurcation is improper for the reasons stated in my Order of February 26, 2007. *See* Order at 21-22. While the Government argues that

all the evidence as to the statutory aggravating factor would have been presented during Rudy Sablan's trial and that bifurcation would not even be an issue, I do not necessarily agree. There is simply no way to determine at this time if this is true. My inclination is that there may well be evidence relevant to this statutory aggravating factor that was not permitted or allowed at the trial. Accordingly, I reject the Government's argument in that regard.

C.    Future Dangerousness

I now address the admissibility of the prior convictions and incidents that the Government uses to support the nonstatutory aggravating factor of future dangerousness in its Fourth NOI. The admissibility of these incidents was raised initially in Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness (R-53, docket # 1701).

By way of background, on April 13, 2006, I issued an Order requiring the Government to file a proffer of the evidence it intends to rely on in connection with the incidents it seeks to use in support of the nonstatutory aggravating factor of future dangerousness. The Government filed its Proffer of Penalty Phase Evidence in Support of Non-statutory Aggravating Factor of Future Dangerousness of Rudy Cabrera Sablan on July 24, 2006. Defendant filed a response on August 7, 2006. On September 15, 2006, the Government filed its Amended Proffer of Penalty Phase Evidence in Support of Non-statutory Aggravating Factor of Future Dangerousness of Rudy Cabrera Sablan.

In my Order of July 6, 2007, I made certain rulings that impact this motion, but I deferred ruling on the admissibility of specific incidents. In my Order of February 27, 2007, issued in William Sablan's case, I provided the framework for the admissibility of this type of incident. I incorporate by reference that ruling in Rudy Sablan's case.

Prior to the hearing, the Government tendered a notebook of exhibits it intends to offer in support of the particular incidents it seeks to admit on the issue of future dangerousness. Rudy Sablan filed a response to these exhibits on November 26, 2007. At the hearing, the evidence was reviewed, and argument was taken by counsel as to the admissibility of the prior convictions and incidents. The Government also called a witness to testify in support of one of the incidents. I now turn to my analysis of these issues.

### 1.   Criminal Case No. 67F-87 (Aggravated Assault)

The Fourth Amended NOI asserts that on or about April 16, 1987, Rudy Sablan was indicted in the Superior Court of Guam for the commission of Aggravated Assault, a second degree felony, for recklessly causing serious bodily injury to Jose C. Camacho on December 4, 1986, in "circumstances manifesting extreme indifference to the value of human life." NOI at 4. He pleaded guilty to this charge on April 12, 1988. *Id.* Court records reflect Rudy Sablan admitted hitting the victim with a buckle belt and with a rock. *Id.* The victim suffered head and facial injuries. *Id.*

The Government seeks to offer certified copies of court documents (1A-1D) in support of this incident. These include the Indictment dated April 16, 1987, alleging that Rudy Sablan recklessly caused serious bodily injury to Jose Camacho in

circumstances manifesting extreme indifference to the value of human life; the Plea Agreement signed by Rudy Sablan on April 11, 1988, stating that "the charge arises out of the assault by the defendant upon Jose C. Camacho on December 4, 1986, with a belt and belt buckle about the facial area causing several deep lacerations and semi-consciousness to Mr. Camacho"; the Recording Log from the Guam Superior Court dated April 12, 1988, containing notes of Defendant's statement that he "took out buckle belt, chased guy, hit one time on road, hit with rock, threw him down, ran back to car"; and the Judgment dated September 23, 1988 nunc pro tunc May 19, 1988.

I find that this incident is not admissible, and grant Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness as to this incident. I find that the probative value of the evidence is outweighed by the danger of creating unfair prejudice. 18 U.S.C. § 3593(c). First, I find that this incident is not particularly probative as it was very remote in time (the incident occurred in 1987, 12 years before the killing of Estrella and almost 21 years from the date of this Order). *See United States v. Davis*, No. CR.A. 01282, 2003 WL 1873088, at *5 (E.D. La. 2003) (striking two prior juvenile adjudications, in part, because they were over ten years old and thus remote in time); *United States v. Gilbert*, 120 F. Supp. 2d 147, 153 (D. Mass. 2000) (finding a prior act unreliable, based in part on the fact that it occurred so long before the homicide—"[a]ny testimony about the incident thirteen years after the fact is not reliable enough to be used at a capital sentencing hearing"). Further, Rudy Sablan was a juvenile at the time (16 years old). While courts do not per se exclude juvenile

convictions used for future dangerousness, it is a factor I may consider. *See Davis*, 2003 WL 1873088, at *5-6.

I also find problems with the admissibility of certain exhibits the Government seeks to admit to prove this incident. For example, the plea agreement was part of a global plea wherein Rudy Sablan pled guilty not only to this offense but to a number of other offenses not at issue or referenced in the NOI (including escape, driving while under the influence and other offenses). With the exception of the indictment (Ex. 1A), the rest of the court documents (1B-1D) reference these other incidents. These documents would thus be very prejudicial if admitted, and I am not sure that redaction is a viable option. Further, the Presentence Investigation Report (Ex. 1G) (even if used for identification only) is problematic in that it references other crimes and contains hearsay based on interviews with family members.

> 2. <u>Incident Report No. 95001</u>

The Fourth Amended NOI asserts that on or about January 1, 1995, at USP-Lompoc, California, inmate John Cruz, who was also from Guam, was assaulted and stabbed in the prison movie theater. NOI at 4-5. A nine-inch shank was recovered from the scene. *Id.* at 5. The defendant and two others were implicated in the incident, but no charges were brought when the victim refused to provide information. *Id.*

Inmate Jay Vought, an inmate at Lompoc at the time of this incident, provided information to the Government on December 20, 2000, that he had witnessed this incident and had talked to the Defendant about it in 1995. *Id.* He told the Government that he saw Rudy Sablan pull a knife and attempt to slash the victim's throat and stab

him in the chest while two others held the victim. *Id.* Mr. Vought also reported that Rudy Sablan told him about the incident and why it happened. *Id.*

The evidence to be presented by the Government in support of the incident includes the testimony of Mr. Vought. Mr. Vought testified at the hearing as to this incident. Further, the Government indicated that testimony may be presented of correctional officers and medical personnel with knowledge. Finally, the Government indicates in the Amended Proffer that it may introduce photos of the weapon, scene of the assault, and victim, institutional passes, and a videotape.

Rudy Sablan argues that no criminal charges were filed as to this incident, and it was not proven to any finder of fact beyond a reasonable doubt. Thus, he asserts that it is unreliable and fails to meet threshold requirements for admission. He also challenges the reliability of Mr. Vought, a government informant who alleges to have witnessed this incident.

Turning to my analysis, I have serious concerns about whether this evidence is sufficiently reliable. The victim refused to provide any information about the stabbing or who stabbed him, and there were no charges brought against Rudy Sablan or anyone else, even after Mr. Vought came forward with his allegations. While some correctional officers may have had suspicions that Rudy Sablan was involved (as evidenced by testimony the Government states may be introduced at trial), these suspicions were not sufficiently corroborated so as to result in the filing of charges.

Thus, the only real evidence linking Rudy Sablan to this incident would come from Jay Vought, another inmate whose reliability appears rather suspect. Mr. Vought

did not provide this information to the Government until December 2000, nearly six years after the incident occurred. It was only provided after Mr. Vought sought the protection of the Government and became an informant in prison. It also was not provided until after this capital case was filed, and it is arguable that Mr. Vought was attempting to gain favorable concessions for his own cases. The timing certainly does seem suspect. Indeed, Mr. Vought informed the Court in his testimony that he is living in conditions in the federal system where he has significant benefits, and that his continued protection turns on whether he provides incriminating evidence against other inmates.

Further, I must consider the fact that Mr. Vought is serving a life sentence for violent crimes and crimes which I believe impact on his credibility, including money laundering and a criminal conspiracy related to drugs. Also in considering Mr. Vought's credibility I must take into account the evidence that Mr. Vought bragged to another inmate that he intended to provide false testimony in this case against Rudy Sablan. This is substantiated by Co-WITSEC inmate Raymond Oeschle who advised the Government that Mr. Vought was lying in connection with these allegations against Rudy Sablan.

More fundamentally, this type of evidence in my opinion goes beyond the bounds of what I believe should properly be considered in a capital case under a heightened reliability standard. This is not unadjudicated conduct that has other indicias of reliability, such as evidence from a law enforcement source or an incident report from the Bureau of Prisons. Instead, it is evidence from another inmate who is

seeking favor from the Government and thus may have a motive for providing this evidence that may not be based in truth. Under these circumstances, I simply cannot find that this evidence is sufficiently reliable. While I find the evidence to be probative, I find that the probative value of this evidence is outweighed by the danger of unfair prejudice, confusion of the issues and misleading of the jury. Accordingly, I grant Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness as to this incident.

3.    <u>Criminal Case No. 1:96-CR-364 (Assault with a Deadly Weapon)</u>

The Fourth Amended NOI asserts that on February 7, 1997, Rudy Sablan was found guilty of Assault with a Deadly Weapon, a violation of 18 U.S.C. §§ 7 & 113(a)(3), in the United States District Court for the Northern District of Georgia. NOI at 5. This was an assault committed on or about February 15, 1996, at the United States Penitentiary, Atlanta, Georgia, against another inmate, Kyung Hwan Mun. *Id*. Defendant was alleged to have repeatedly stabbed the victim with an ice-pick type weapon in the head and neck. *Id*. Two of the stab wounds punctured the victim's carotid artery. *Id*. The weapon appeared to have been fashioned from a mop wringer and was six to seven inches long. *Id*.

On or about April 18, 1997, Rudy Sablan was sentenced to 110 months incarceration in connection with this crime. This incident is reported to have been connected with the defendant's involvement with a prison gang known as the Asian Family—the victim was attacked shortly after he refused the defendant's request that the victim join the organization. *Id*.

The Government seeks to admit certified copies of court documents including a Transcript of Jury Verdict dated February 7, 1997, a Verdict Form dated February 7, 1997, and a Judgment dated April 22, 1997. The Government also seeks to admit transcripts of the trial proceedings as to testimony from the victim Mr. Mun, live testimony from witnesses other than Mr. Mun and medical personnel about the victim's injuries, photographs of Rudy Sablan and of the injuries to the victim. Finally, if the issue is contested, the Government will establish identification of Rudy Sablan through various means identified in the Government's Amended Proffer.

Rudy Sablan objects to the admissibility of this evidence. He argues among other things that this is testimonial evidence that must be excluded and that this evidence will require a trial within a trial.

Turning to my analysis, I find that evidence about this incident is probative and that the probative value outweighs any danger of unfair prejudice, confusion of the issues or misleading the jury under 18 U.S.C. § 3593. This is evidence of a crime of serious assault that Rudy Sablan was found to have committed against another inmate in prison. As such, it is highly probative on the issue of future dangerousness. *See Kelly v. South Carolina*, 534 U.S. 246, 253 (2002) ("evidence of violent behavior in prison can raise a strong implication of 'generalized ⋯ future dangerousness'"); *United States v. Sampson*, 335 F. Supp. 2d 166, 225-26 (D. Mass. 2004) ("[p]ast violence by a defendant in prison is relevant evidence that a prosecutor could use to prove future dangerousness. . . ."); *United States v. Grande*, 353 F. Supp. 2d 623, 640 (E.D. Va. 2005) ("serious assaults on or threats to fellow inmates or correctional staff" would be

-13-

admitted as to future dangerousness); *see also United States v. Chong*, 98 F. Supp. 2d 1110, 112227 (D. Hawai'i 1999) (assaults of guards and inmates admissible).

The question then becomes the extent to which the testimonial evidence the Government seeks to admit is subject to *Crawford*. The primary issue is whether the victim Mr. Mun is unavailable within the meaning of the law. The Government was ordered to provide briefing as well as all the information at its disposal regarding the availability of Mr. Mun. If Mr. Mun is not available, the Government was ordered to provide briefing on what portions of the trial transcripts it intends to use (and provide those transcripts to the Court) as well as whether the transcripts are properly admitted pursuant to *Crawford*. This briefing was filed by the Government on January 25, 2008, and indicates that Mr. Mun is not available. To date, Defendant has not filed a response. The parties shall be prepared to address the issues raised in the Government's Trial Brief Regarding Admissibility of Prior Trial Testimony of Penalty Phase Witness Kyung Mun at a convenient point during the trial of this matter.

Finally, it appears that interviews of the victim and others (3I, 3N, 3O and 3P) are governed by *Crawford*. Accordingly, these interviews will be excluded unless the Government can show that the requirements of *Crawford* are met as to their admission.

In conclusion as to this incident, Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness is denied in part and deferred in part as to this incident. It is denied to the extent that it seeks to strike this incident under the balancing test of 18

U.S.C. § 3593. It is deferred as to whether the testimonial evidence regarding this incident, including trial transcripts with testimony from the victim, is admissible.

### 4.    Incident Report No. 511205 (Serious Assault)

The Fourth Amended NOI asserts that on or about June 9, 1997, at the USP, Florence, Colorado, inmate Rudy Cabrera Sablan was found to have committed a serious assault on another inmate, Alan Carinio. NOI at 6. The hearing officer found that the defendant was one of three inmates involved in the assault. *Id.* The victim was forced to the floor of his cell and stabbed in the ear with a knife. *Id.* He was then stomped and kicked as he lay on the floor. *Id.* The hearing officer concluded that the location of the injury reflected an intent to cause serious bodily injury or death. *Id.* The Government intends to offer testimony of the victim Alan Carinio, if he is located, and other witnesses regarding the incident and/or injuries.

The Government advised at the hearing that Mr. Carinio had absconded from custody and that a warrant was pending for his arrest. The Government indicated that efforts were being made to locate him so that he could be brought in to testify in person against this incident. The admissibility of this incident is deferred until the penalty phase. I will evaluate at that time whether Mr. Carinio is available and will have an evidentiary hearing to determine the reliability of this incident. Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness is thus deferred as to this incident.

Finally as to this incident, the Government shall inform defense counsel if Mr. Carinio is located and the Government believes it can produce him as a live

witness at trial.  Further, defense counsel indicated at the hearing of this matter that it had evidence to suggest that Defendant was not involved in this incident.  Accordingly, if Mr. Carinio is located, defense counsel shall then provide whatever information it has in the form of a proffer to the Government that suggests why Defendant was not involved in this assault in a way that would impact the probative value of this incident.

5.     Incident Report No. 544140 (Possession of Weapon)

The Fourth Amended NOI asserts that on or about December 3, 1997, at the USP, Florence, Colorado, inmate Rudy Sablan was in possession of a weapon in his cell.  NOI at 6.  Officers found a 13 inch by 2 inch wide piece of metal hidden in the light fixture of the cell.  *Id*.  The metal had been cut down on one side and fashioned into an edge.  *Id*.  The defendant admitted that the weapon was his, stating that he was going to fix it up and hold on to it.  *Id*.  The Government will present testimony of Counselor Andert and Lieutenant H. Clifton Gray in support of this incident as well as a photograph of the weapon.

I find that this incident is admissible.  Indeed, Defendant presented no argument at the hearing as to why it is not admissible.  I find that the probative value of the incident outweighs any danger of unfair prejudice, confusion of the issues or misleading the jury under 18 U.S.C. § 3593.  Possessing a shank shows that Defendant purposely possessed contraband that could harm or even kill another inmate or a guard.  Other courts have held that such evidence is probative of future dangerousness.  *See Sampson*, 335 F. Supp. 2d at 225-26 ("[i]n this case the government presented evidence that the defendant had . . . possessed 'shanks'

(sharpened instruments) in prison . . . . [o]ther courts have considered this sort of evidence in evaluating the sufficiency of the evidence concerning future dangerousness . . . . ").[1]  Accordingly, Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness is denied as to this incident.

6.     Incident Report No. 600457 (Serious Assault)

The Fourth Amended NOI asserts that on or about June 13, 1998, at the USP, Florence, Colorado, Rudy Sablan was found to have committed a serious assault on another inmate, Michael Menzer.  NOI at 6.  The defendant admitted assaulting the inmate with his hands and feet and then tying him up.  *Id.*  The victim inmate suffered serious head and body injuries.  *Id.*  The evidence to be presented by the Government in support of this incident includes the testimony of correctional officers and medical personnel with knowledge.

Defendant confessed to Officer Martinez.  Specifically, he admitted assaulting one of his cellmates using his hands and feet.  According to Defendant's confession, when the victim was unconscious Defendant tied the victim's hands and feet with torn strips of sheets. The victim was found bleeding profusely from his face and head and had the following injuries:  contusions to his temporal, auricular, nasal area; swelling to his upper and lower lips, both wrists, left side of face; bruising to left upper arm and

_____

[1]  I allowed in similar evidence in co-Defendant William Sablan's case.  I noted in my Order of February 26, 2007, issued in that case that evidence of conduct which can potentially cause harm to someone in prison (even if the defendant has not yet actually caused harm through that act) is relevant and probative to the issue of future dangerousness.

upper left shoulder; and abrasions to left mid back area. The reports indicate that Rudy Sablan admitted the assault, explaining that he did it because the victim was talking about molesting someone.

I find that this incident is admissible, and deny the motion to strike this incident. I find that the probative value of the incident outweighs any danger of unfair prejudice, confusion of the issues or misleading the jury under 18 U.S.C. § 3593. Evidence of violence against other inmates is highly probative on the issue of future dangerousness. *See Kelly*, 534 U.S. at 253 ("evidence of violent behavior in prison can raise a strong implication of 'generalized ⸱⸱⸱ future dangerousness'"); *Sampson*, 335 F. Supp. 2d at 225-26 ("[p]ast violence by a defendant in prison is relevant evidence that a prosecutor could use to prove future dangerousness. . . ."); *Grande*, 353 F. Supp. 2d at 640 ("serious assaults on or threats to fellow inmates or correctional staff" would be admitted as to future dangerousness); *see also Chong*, 98 F. Supp. 2d at 1122-27 (admitting evidence of assaults of guards and inmates).

While Defendant argues that his role in the incident is unclear, I disagree. The Government states that the evidence will show that Defendant admitted his conduct. Thus, I reject Defendant's argument that the jury will not be able to give Rudy Sablan the individualized consideration he deserves as to this incident. Further, the fact that this is an unadjudicated incident subject only to the BOP administrative procedures does not make it inadmissible. In William Sablan's case and in the above cited cases, similar incidents have been held to be reliable enough to be admitted in connection with future dangerousness. Accordingly, Rudy Sablan's Motion in Limine Regarding

Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness is denied as to this incident.

7. Incident Report No. 654106 (Fighting)

The Fourth Amended NOI asserts that on or about January 29, 1999, at the USP, Florence, Colorado, Rudy Sablan was involved in a fight with another inmate. NOI at 6-7. An officer observed the defendant attempt to break up a fight between two other inmates. *Id*. at 7. When one of these inmates hit the defendant, the defendant then punched, kicked, and stomped the victim, stopping only when physically separated by staff. *Id*. The evidence to be presented by the Government in support of the incident includes the testimony of Senior Officer Christopher Jensen who witnessed the fight and Physician's Assistant Marvelyn O. Guiang regarding injuries suffered by the victim.

The Government asserts as to the facts of this incident that on January 29, 1999, Rudy Sablan was observed by a corrections officer trying to break up a fight between two other inmates. When the defendant was hit, he then punched, kicked, and stomped the inmate who hit him. The defendant refused to stop until physically separated by staff. The Government argues that this incident is informative not only for the level of violence in the defendant's "self-defense" but also for his inability or refusal to stop the beating once it started without being physically pulled away. Thus, the Government asserts that it is relevant to a determination of future dangerousness.

Rudy Sablan argued in response to the proffer that this incident is a good example of how misleading and unfairly prejudicial these incidents can be. They are

subject only to summary administrative procedures, without counsel or other due process. In this proffer, it is suggested that Rudy Sablan was trying to "break up a fight between two other inmates." It was only when one of the inmates attacked him, that Rudy acted in self-defense. Rudy Sablan further asserts that the exhibits are testimonial hearsay and replete with speculation, opinion and unreliable conclusions. More than one person was involved and it would be impossible for the jury to give individualized consideration to this incident. Finally, it is argued that any probative value related to this incident is clearly outweighed by the danger of unfair prejudice.

I find that this evidence is admissible, and deny the motion to strike this incident. Specifically, I find that the probative value of the incident outweighs any danger of unfair prejudice, confusion of the issues or misleading the jury under 18 U.S.C. § 3593. I allowed in similar incidents in William's case, finding that such incidents are highly probative on the issue of future dangerousness. *See Kelly*, 534 U.S. at 253 ("evidence of violent behavior in prison can raise a strong implication of 'generalized ⋯ future dangerousness'"); *Sampson*, 335 F. Supp. 2d at 225-26 ("[p]ast violence by a defendant in prison is relevant evidence that a prosecutor could use to prove future dangerousness. . . ."); *Grande*, 353 F. Supp. 2d at 640 ("serious assaults on or threats to fellow inmates or correctional staff" would be admitted as to future dangerousness); *see also Chong*, 98 F. Supp. 2d at 1122-27 (assaults of guards and inmates admissible).

While I recognize that this started out as a fight between other inmates that Rudy Sablan was attempting to break up, when Defendant was hit he reacted violently

in response.  As such, I think it is very relevant to the issue of future dangerousness.

Again, the fact that this is an unadjudicated incident subject only to the BOP

administrative procedures does not make it inadmissible.  In the above cited cases,

similar incidents have been held to be reliable enough to be admitted in connection

with future dangerousness.  Accordingly, Rudy Sablan's Motion in Limine Regarding

Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of

Future Dangerousness is denied as to this incident.

> 8.    Incident on February 9, 2001

The Government withdrew this incident at the hearing and it is not referenced in

the Fourth Amended NOI.  Accordingly, Rudy Sablan's Motion to Strike is denied as

moot as to this incident.

> D.    Defendant's Motion in Limine to Admit Evidence of Character and Habit
>       Regarding Joey Estrella

Defendant's motion seeks an order *in limine* allowing the admission of evidence

regarding the character and habits of Joey Estrella pursuant to FED. R. EVID. 404 and

406.  Defendant asserts that Mr. Estrella's record is replete with prior, senseless acts of

violence against other inmates as well as guards and personnel.  Further, he asserts

that Mr. Estrella was in custody for bank robbery, and had a criminal history category of

VI, the highest.

The motion in limine discusses seven (7) prior convictions/findings of guilt or bad

conduct of Mr. Estrella that he seeks to admit.  In Rudy Sablan's proffer submitted as to

these incidents on November 21, 2007, Defendant narrows what he seeks to admit

under Rule 404(b).  He now seeks to offer four (4) specific incidents under Rule 404(b): (1) an incident on June 30, 1994, (2) an incident on September 10, 1997, (3) an incident on December 31, 1997, and (4) an incident on September 21, 1998. Defendant attaches the BOP reports regarding the proffered incidents.  On December 5, 2007, Defendant supplemented this motion through submitting evidence in support of certain of these incidents.

Defendant argues that there is substantial evidence that Mr. Estrella was the aggressor, and that William Sablan acted in self-defense.  There is also evidence that Rudy Sablan made efforts at being the peace maker and, if he took any action at all, it was in defense of William Sablan.  Defendant argues that the Government's evidence suggests that there was a fight between William Sablan and Mr. Estrella caused by Joey Estrella's typically aggressive attitude towards other inmates and exacerbated by intoxication.  Evidence of Mr. Estrella's aggressive nature and habits is necessary for the jury to understand the circumstances of Mr. Estella's death and to support and corroborate self-defense issues.  Defendant also asserts that evidence of Mr. Estrella's aggressive nature helps put in context the actions of William and Rudy Sablan after his death.

On January 17, 2006, I issued an Order addressing the legal framework of Rules 404, 405 and 406 as it applies to this motion.  I incorporate that framework into this Order.  While that Order discussed Rules 404(a), 405 and 406, it appears that Defendant is now seeking to admit this evidence only under Rule 404(b).  Indeed, it appears that the evidence at issue may not be admissible under Rules 404(a)(2) and

405, since that testimony would be limited to character evidence offered only by way of reputation or by testimony in the form of an opinion. If Defendant intends to offer any character evidence, that will be addressed at trial. Further, Defendant has not shown that the evidence at issue rises to the level of a habit as required for admissibility under Rule 406. Indeed, defense counsel asserted at the hearing that they no longer intended to rely on that Rule.

Thus, I turn to Rule 404(b). The January 17, 2006 Order found that evidence of prior acts of violence of the victim may be admissible under that Rule. The Order stated the requirements that Defendant must meet in order for any such prior acts of Mr. Estrella to be admissible under that rule, which I follow herein. One of the requirements was that Defendant must show how the prior acts of Mr. Estrella are relevant to an issue in the case. I find that Defendant has made such a showing through his argument that there is substantial evidence that Mr. Estrella was the aggressor (that he had an intent and motive to start the fight) and that William Sablan acted in self-defense. Further, Rudy Sablan has argued that this evidence is relevant to show that Mr. Estrella had the intent and motive to be the tough guy on the block, to establish himself as tough with other inmates. Thus, the evidence may be relevant to the state of mind of Joey Estrella as well as the state of mind of Rudy and William Sablan, *i.e.*, their fear of the victim.

While the Government argued that this evidence is not probative in this case, I disagree. Rudy Sablan is charged, among other things, with aiding and abetting, *i.e.*, complicity, assisting William Sablan in first-degree murder. The fact that William

Sablan may have committed the offense while acting in self-defense, an argument made by Rudy Sablan, is certainly relevant to Rudy Sablan's defense. I now turn to the admissibility of each of the incidents under Rule 404(b).

       1.   <u>June 30, 1994 Incident</u>

The June 30, 1994 incident involves an alleged conviction of Joey Estrella for assaulting another inmate. Rudy Sablan asserts that in this incident Mr. Estrella bragged that he was a member of the Mexican Mafia. It is also argued that there was no reason for the assault other than Joey Estrella attempting to establish his reputation as a "tough" inmate. I find that evidence as to this incident should be excluded because it is not close enough in time to the incident at issue in 1999. The Tenth Circuit has excluded incidents that were four to five years from the incident at issue. *United States v. Becker*, 230 F.3d 1224, 1232 (10th Cir. 2000) ("[f]our to six years transcends our conception of 'close in time' . . . . ") (quotation omitted); *United States v. Mixon*, No. 98-3004, 1999 WL 436269, at *5 (10th Cir. 1999) (excluding offenses that occurred almost four years before the conduct charged in the indictment).

I also find that the probative value of this evidence is outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. For example, the evidence offered in support of this incident by Defendant details Mr. Estrella's history, including an extensive juvenile history. It also states why he was in prison (for bank robbery) and details other offenses in jail (including another assault and possession of a weapon). This evidence is unrelated to the assault at issue and would be extremely prejudicial if admitted. The report also makes the statement that "Information has been

received that Estrella likes to brag to other inmates that he is a member of the Mexican Mafia." This appears to be unsubstantiated hearsay.

Further, Rudy Sablan states in the proffer that Joey Estrella bragged that he was a member of the Mexican Mafia in connection with this assault, and that there was no reason for the assault other than Mr. Estrella attempting to establish his reputation as a "tough" inmate. Again, the evidence submitted by Defendant does not necessarily bear this out. While the report states that Joey Estrella likes to brag to other inmates that he is a member of the "Mexican Mafia", there is no indication that this was done in connection with the assault at issue. Further, there is no evidence as to why Joey Estrella assaulted this inmate. Finally, there is no indication that Mr. Estrella was actually ever found guilty of or convicted of this offense.

For all of these reasons, I find that this evidence must be excluded. Accordingly, Rudy Sablan's Motion in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella is denied as to this incident.

### 2. September 10, 1997 Incident

This incident occurred at USP Lompoc. Joey Estrella was accused of assaulting another inmate and threatening to kill him. The report relevant to this incident states that Mr. Estrella, who was handcuffed, was found kicking and then stomping on the victim, who was in ambulatory restraints. Mr. Estrella admitted his involvement and guilt and told a Correctional Officer that he would do it again if he had the chance. Defendant submitted evidence in support of this incident in connection with his November 21, 2007 Proffer and his Supplement filed December 5, 2007.

While this incident is closer in time, it still occurred approximately two years before the incident in question. Thus, it is questionable whether this is close enough in time to the incident at issue. *See United States v. Ramirez*, 63 F.3d 937, 943-44 (10th Cir.1995) (upholding the admission of prior acts that occurred one year earlier); *cf. United States v. Record*, 873 F.2d 1363, 1372-76 (10th Cir.1989) (upholding the admission of prior acts that occurred approximately two to three years earlier).

Even if it is close enough in time, I find that the evidence is not very probative on the issue of Mr. Estrella's state of mind, *i.e.,* whether he was the aggressor in the fight with the Sablans. According to the evidence submitted by Defendant, Mr. Estrella said that this assault was motivated by the fact that the victim was a child molester. Joey Estrella said in a report of September 16, 1997, of the hearing on this matter that "he had two children" of his own and he "just could not let that be." (Ex. A-1, Second Supp. to Def.'s Mot. in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella.)

I find that the assault was based on a specific motivation simply not at issue in this case. The fact that Mr. Estrella wanted to assault a child molester does not translate, in my opinion, to evidence that Mr. Estrella generally was a violent person with other inmates or that he had the state of mind generally to be the aggressor with other inmates. In other words, I find that Defendant has not shown "a clear and logical connection" between this act and the incident at issue with the Sablans. *See* January 26, 2006 Order at 7. I further find that even if probative, the probative value is outweighed by the danger of unfair prejudice and confusion of the issues given the

expressed motivation at issue in this incident. Accordingly, I find that this evidence should be excluded. Rudy Sablan's Motion in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella is denied as to this incident.

3. December 31, 1997

This incident occurred at USP Lewisburg. Joey Estrella was accused of a serious assault on another inmate. According to the evidence submitted in connection with this incident, the fight was over a basketball game. (*See* Exs. B-1 and B-2, Second Supp. to Def.'s Mot. in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella.) During the investigation, Mr. Estrella stated that the victim got hurt because he did not know how to fight. The report indicates that Mr. Estrella punched and kicked the victim several times in the face and upper torso area, and that the victim required emergency medical treatment for the injuries he sustained during the fight. Indeed, the report indicates that had the altercation proceeded any further, it could have resulted in life-threatening injuries to the victim.

The report states that Mr. Estrella admitted being guilty of a fight, and that he was the only one involved in the fight. He stated that his "homeboys were trying to break it up." However, the report indicates that there was evidence from the correctional officers who observed the fight that three other inmates were also beating up the victim. Indeed, the report concluded that the assault involved four inmates (including Mr. Estrella) on a single unarmed person in an attempt to do serious bodily harm. The victim reported that Joey Estrella had struck him several times, then the other three inmates followed by punching and kicking him.

-27-

I first address whether this act occurred within close enough proximity to the incident at issue to be admissible. While this is closer in time to the incident at issue than the previous incidents, it still occurred almost two years before. Nonetheless, I find that this incident is close enough in time to the incident at issue to be considered. *See Record*, 873 F.2d at 1372-76 (upholding the admission of prior acts that occurred approximately two to three years earlier).

I next consider the similarity of this incident to the incident at issue involving Mr. Estrella and the Sablans. It appears from the evidence that this assault is similar enough to the incident at issue. In other words, it appears from the evidence on this incident that Mr. Estrella was the initial aggressor and started the fight. That is what Rudy Sablan argues the evidence suggests in this case. It further appears that Mr. Estrella may have been intending to inflict serious injuries on the victim, which again is relevant to the incident at issue. I find that this incident is probative on the issue of whether Mr. Estrella was the aggressor as well as whether William and/or Rudy Sablan acted in self defense. I further find that the probative value of this evidence outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury.

I now turn to the issue of Rudy Sablan's knowlege of this incident or of Joey Estrella's violent nature generally. As noted in my Order of January 17, 2006, there are cases which have held that evidence of the victim's violent character can be admitted only if the defendant knew of the victim's character (or knew of the specific prior acts at issue). *See United States v. Burks*, 470 F.2d 432, 434-35 (D.C. Cir. 1972). I find that

the better analysis of this issue is found in *Fortini v. Murphy*, 257 F.3d 39, 46 (1st Cir. 2001), wherein the First Circuit held that prior violence by the victim, even though unknown to the defendant, was relevant under Rule 404 as tending to portray the victim as a violent man. *Fortini* stated, "Although the evidence of the [prior episode of violence] was certainly not relevant to *Fortini's* state of mind (since he did not then know about the fight), it was relevant to [the victim's] state of mind, making it more likely than it would be without the evidence that [the victim] lunged at Fortini, as the latter claimed." *Id.*

I rely on *Fortini* and find that even though Rudy Sablan has not shown that he knew of the prior violent acts of Joey Estrella, it is still admissible as relevant to his defense that Mr. Estrella was the aggressor and that William Sablan acted in self-defense in connection with the assault. Accordingly, I find that this evidence is admissible, and grant Rudy Sablan's Motion in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella as to this incident.

### 4. September 21, 1998 Incident

This incident occurred at USP Lewisburg. Rudy Sablan asserts that Mr. Estrella was convicted of a serious assault on another inmate, Mr. Cox. A Correctional Officer saw Mr. Estrella assaulting Mr. Cox in a rec pen. "Cox was laying on the ground and Estrella was kicking him in the face and head. Estrella did all the assaulting as Cox was trying to defend himself." Mr. Cox had "very serious" injuries.

The evidence submitted by Defendant as to this incident shows that Joey Estrella took the position in the hearing that the alleged victim took the first swing. If

that were true, this would not be very probative on the issue of whether Mr. Estrella was the aggressor in the fight with William Sablan. However, the report indicates that Mr. Estrella was found guilty of this incident, which it characterized as a serious assault. The report also indicates that the witnesses saw Mr. Estrella assaulting the victim with the victim laying on the ground while Mr. Estrella kicked and punched him. The report concluded that even if Mr. Estrella was correct that Mr. Cox took the first swing, the amount of force Mr. Estrella used to combat this was excessive and resulted in serious injuries.

Turning to my analysis, this incident is the closest in time to the incident at issue, occurring just a little more than a year before the incident. I find it is close enough in time to the incident to be probative. Further, it is similar to the incident at issue wherein Mr. Estrella is alleged to have started a fight with William Sablan and inflicted injuries on him. It also could be relevant to show Mr. Estrella's state of mind, i.e., that he was the aggressor, and that William Sablan may have acted in self-defense.

To the extent that the evidence supports a theory that Mr. Estrella may not have been the initial aggressor, I note that Mr. Estrella was found guilty of this offense. Further, even if he was not the initial aggressor, the evidence shows that the amount of force he used in response was excessive. As such, it could be probative on the issue of self-defense by William Sablan. While Rudy Sablan has not shown that he knew of this incident, under the *Fortini* analysis discussed previously I find that it is still admissible as relevant to his defense that Mr. Estrella was the aggressor and that William Sablan acted in self-defense in connection with the assault.

In conclusion, having considered this incident carefully, I find that the probative value of this evidence outweighs the danger of unfair prejudice, confusion of the issues or misleading the jury.  Accordingly, Rudy Sablan's Motion in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella is granted as to this incident.

     E.     <u>Defendant's Motion in Limine to Admit Evidence of Defendant William Sablan's Mental Condition</u>

This motion was deferred in the December 2007 hearing.  A  hearing was held on this motion on February 1, 2008.  The motion was again deferred at the hearing subject to counsel meeting and conferring on the issues that remain.  Counsel were directed to file a motion on any remaining issues as to William Sablan's mental health not later than February 19, 2008, and to file motions in limine by February 12, 2008.

On February 12, 2008, the Government filed a Motion in Limine Re: Testimony of Dr. David Lovejoy.  That motion, which addressed testimony of Dr. Lovejoy regarding William Sablan's mental health, was again deferred until after the Government had an opportunity to interview Dr. Lovejoy.  I find that the Government's Motion in limine, which is the more current motion as to disputes about mental health, moots Defendant's motion in limine as to evidence of William Sablan's mental condition.  In other words, any remaining issues regarding the admissibility of William Sablan's mental condition will be addressed in connection with the Government's motion. Defendant's Motion in Limine to Admit Evidence of Defendant William Sablan's Mental Condition is thus denied as moot.

F.    Defendant's Motion in Limine Regarding Statements of William Sablan

Defendant's Motion in Limine Regarding Statements of William Sablan concerns the admissibility of certain statements made by William Sablan.  It addresses statements made both from inside the cell and outside the cell.  The parties agreed at the hearing that all in-cell statements or other statements on the videotape are admissible and that the Court does not need to rule on those statements.  Accordingly, Defendant's Motion in Limine Regarding Statements of William Sablan is denied as moot as to those statements.

The statements that remain at issue are those that William Sablan made outside the cell to FBI Agent Veltman.  As to those statements, William Sablan was interviewed after he was removed from the cell by Agent Veltman and agreed to speak after being advised of his rights.  William Sablan allegedly stated to Agent Veltman that he was sleeping when the victim attacked him, that Mr. Estrella kicked him in the head, that he called to Rudy Sablan for help but Rudy did not respond, that he then forced Mr. Estrella to the floor and choked him until he was still.  William Sablan also stated that he was worried that Joey Estrella was affiliated with a Mexican gang in prison and felt that if he did not kill the victim, he would be killed by him or members of his gang. Further, it was stated by William Sablan that: (1) he used a razor to cut Mr. Estrella's throat, "went crazy and gutted him like a pig to make sure he was dead," and then removed the victim's organs "to be completely sure he was dead"; (2) he was sorry for what he did but would rather die by injection than be killed by an inmate in prison; and (3) Rudy Sablan did not participate in the killing.

Rudy Sablan contended in his original motion that those statements are admissible under FED. R. EVID. 804(b)(3) and 807, as well as for the purpose of establishing the guilt of an alternate suspect pursuant to *People v. Perez*, 972 P.2d 1072 (Colo. App. 1998). In his supplement to the motion filed October 12, 2007, Defendant argued that these statements are admissible under FED. R. EVID. 803(2), 803(3), 804(b)(3), 807 and as *res gestae*. Further, Defendant argued that the Government is not in a position to argue that these statements are unreliable, since it was its proponent in William Sablan's trial. Finally, he argued that the Government deemed the statements reliable enough to use them to seek a death sentence against William Sablan.

Turning to my analysis, I first note that to the extent Defendant seeks to admit these statements under his theory of "alternative suspect", he still must show that it falls within a hearsay exception. As the Government notes, whatever the theory of defense, hearsay is only admissible if it comes within an exception to the hearsay rule. Second, I agree with the Government that the fact these statements were used in William Sablan's trial does not mean that they are necessarily admissible in this case. The statements in William Sablan's case were against a party opponent and admissible under FED. R. EVID. 801(d)(2). Therefore, they were not hearsay in that case. *Id.* In this case, the statements are hearsay. Thus, Defendant has to show that the statements are admissible under an exception to the hearsay rules. I discuss below each of the rules and theories relied on by Defendant to admit these statements.

1.      Rule 803(2)

First, I address Rule 803(2) of the Federal Rules of Evidence.  This hearsay

exception is applicable to excited utterances ("A statement relating to a startling event

or condition made while the declarant was under the stress of excitement caused by the

event or condition").  FED. R. EVID. 803(2).  According to the Supreme Court, "[t]he

basis for the 'excited utterance' exception . . . is that such statements are given under

circumstances that eliminate the possibility of fabrication, coaching, or confabulation,

and that therefore the circumstances surrounding the making of the statement provide

sufficient assurance that the statement is trustworthy and that cross-examination would

be superfluous."  *Idaho v. Wright*, 497 U.S. 805, 820 (1990).  In other words, "Rule

803(2) rests on the theory that the agitated mind is much less likely to engage in

conscious fabrication than the reflective mind.  *United States v. Ledford*, 443 F.3d 702,

711 (10th Cir. 2005), *cert. denied*, 127 S. Ct. 164 (2006).

The Tenth Circuit holds that this exception "requires that (1) there was a startling

event; (2) the statement was made while the declarant was under the stress of

excitement from this event; and (3) the statement related to this event."  *Id*. at 710.  The

time that elapses between the startling event and the statement is a relevant

consideration.  However, "there is no precise amount of time between the event and the

statement beyond which the statement cannot qualify as an excited utterance.  *Id*. at

711.  In *Ledford*, the Tenth Circuit found that when the duration between the startling

event and the statement was up to thirty-five minutes, this was "within an admissible

temporal range." *Id.* (citing cases admitting statements that occurred within 15-30 minutes of the event).

In addition to the lapse of time, other factors to be considered in determining whether a statement falls within this exception include "whether the statements were made in response to an inquiry, [the] age [of the person making the statement], the characteristics of the event, [the] physical and mental condition [of the person], and the subject matter of the statements. *United States v. Marrowbone*, 211 F.3d 452, 454-55 (8th Cir. 2000). Another consideration is whether the statements were the product of reflection or deliberation as compared to being spontaneous, excited or impulsive. *Reed v. Thalacker*, 198 F.3d 1058, 1061 (8th Cir. 1999). Yet another consideration is whether William Sablan's actions show continuous excitement or stress from the time of the event until the time of the statements. *See Marrowbone*, 211 F.3d at 455.

In the case at hand, I find that William Sablan's statements to Agent Veltman do not constitute an excited utterance. First, I find that a substantial amount of time elapsed between the incident and the statements made by William Sablan. Indeed, the Government indicated at the hearing that these statements were made three (3) hours after the homicide, and Defendant did not argue to the contrary.[2] Further, these statements were made in response to an inquiry from the FBI, which detracts from the spontaneity of the statements. Further, a substantial period of time elapsed before the statements were made while Defendant William Sablan was being held after the

_____

[2] Even if the statements were made one (1) hour after the homicide, I find that this amount of time is beyond the constraints of the excited utterance rule.

homicide. This gave him time for reflection or deliberation. Overall, I find that the statements made to Agent Veltman after William Sablan was removed from the cell do not constitute excited utterances.

### 2. Rule 803(3)

The hearsay exception in Rule 803(3) relates to statements of "then existing mental, emotional, or physical condition". The Rule provides an exception to the hearsay rule for "[a] statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health, but not including a statement or memory or belief to prove the fact remembered or believed. . . "). FED. R. EVID. 803(3). The Tenth Circuit has stated, that "[t]he essence of the state of mind exception is that there are circumstantial guarantees of trustworthiness attendant to a statement that reflects a then existing mental, emotional or physical condition. . . .'" *United States v. Rodriguez-Pando*, 841 F.2d 1014, 1019 (10th Cir. 1988) (quoting *Trustees of the Univ. of Pa. v. Lexington Insurance Co.,* 815 F.2d 890, 905 (3d Cir.1987)). "'[S]tatements relating to a person's state of mind have probative value mainly because the declarant has no chance to reflect upon and perhaps misrepresent his situation.'" *Id.* (quoting *United States v. Jackson*, 780 F.2d 1305, 1315 (7th Cir.1986)).

The Rule does not "'permit the witness to relate any of the declarant's statements as to why [the declarant] held the particular state of mind, or what [the declarant] might have believed that would have induced the state of mind.'" *McInnis v. Fairfield Communities, Inc.*, 458 F.3d 1129, 1143 (10th Cir. 2006) (quotation omitted).

In other words, statements as to *why* the declarant had the feelings or state of mind are inadmissible. *Id.* Further, "a statement that would otherwise be admissible under [this] exception is inadmissible if it is a statement of memory or belief offered to prove the fact remembered or believed." *Ledford*, 443 F.3d at 709. Thus, the statement "I am scared" is admissible under this exception but not "I am scared because the defendant threatened me." *Id.*

I also note that the Tenth Circuit has indicated that where a statement was made in a post-arrest interview with a police officer, it was "made in circumstances which cast serious doubt on its credibility." *Rodriguez-Pando*, 841 F.2d at 1018. It held that a tape-recorded statement by the defendant to a police officer upon his arrest that he had been coerced into transporting the contraband and that both he and his family were threatened that morning with physical harm if he did not cooperate was a statement of memory or belief expressly excluded by Rule 803(3). *Id.* at 1016, 1019. Thus, it was inadmissible to show his state of mind at the time of the arrest. *Id.* at 1019.

In the case at hand, I find that the vast majority of statements made to Agent Veltman by William Sablan do not fall within the parameters of this rule as they do not address William's state of mind.[3] The only statement that arguably might fall within this exception is the statement that William was worried about Mr. Estrella being affiliated

---

[3] For example, the statements that Mr. Estrella kicked William in the head, that he called to Rudy for help but Rudy did not respond, that William forced Mr. Estrella to the floor and choked him until he was still, that William felt that if he did not kill the victim, he would be killed by him or members of his gang, that he used a razor to cut the victim's throat, "went crazy and gutted him like a pig to make sure he was dead" and then removed the victim's organs "to be completely sure he was dead", that he was sorry for what he did but would rather die by injection than be killed by an inmate in prison, and that Rudy did not participate in the killing are not statements as to state of mind but are statements of fact or statements of memory or belief.

with a Mexican gang in prison. The remainder of the statement (that he felt if he did not kill Mr. Estrella he would be killed by him or by members of his gang) would not be admissible under this exception since it explains why William Sablan was worried.

Even as to the one statement that is arguably admissible under this rule, I note that it was made to an FBI agent under circumstances that cast doubt on its credibility. In other words, as indicated above, statements relating to a person's state of mind have probative value mainly because the declarant has no chance to reflect upon and perhaps misrepresent his situation. Here, William Sablan did have time to reflect on the situation and thus may have had a motive to misrepresent his situation. Accordingly, I find that this statement is not sufficiently trustworthy and thus does not meet the requirements of Rule 803(3).

        3.     <u>Rule 804(b)(3)</u>

This hearsay exception relates to "statements against interest." The Rule provides an exception to the hearsay rule for "[a] statement which was at the time of its making so far contrary to the declarant's pecuniary or propriety interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." FED. R. EVID. 804(b)(3). The rationale for this exclusion is that persons generally will not make damaging statements against themselves unless they are true. *See Turpin v. Kassulke*, 26 F.3d 1392, 1398 (6th Cir. 1994), *cert. denied*, 513 U.S. 1118 (1995).

According to the Tenth Circuit, "[a] defendant seeking to admit hearsay evidence under Rule 804(b)(3) to exculpate himself must show '(1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to indicate the trustworthiness of the statement.'" *United States v. Spring*, 80 F.3d 1450, 1460 (10th Cir. 1996) (quoting *United States v. Porter,* 881 F.2d 878, 882 (10th Cir. 1989)). Further, as indicated by the Rule, "'corroborating circumstances [must] *clearly* indicate the trustworthiness of the statement." *Id.* (quoting Fed. R. Evid. 804(b)(3) (emphasis added)).

The Tenth Circuit has also indicated that corroboration of the declarant's trustworthiness should focus both on the declarant's reliability when the statement was made and corroboration of the truth of the declarant's statement, focusing on whether the evidence in the record supported or contradicted the statement. *United States v. Salvador*, 820 F.2d 558, 561 (10th Cir. 1987). Other courts have, however, held "that Rule 804(b)(3) does not require that the information within the statement be clearly corroborated; it requires only that there be corroborating circumstances which clearly indicate the trustworthiness of the statement, itself." *United States v. Price*, 134 F.3d 340, 347 (citing *United States v. Garcia*, 986 F.2d 1135 (7th Cir. 1993)). *Price* indicated three circumstances which are relevant to that issue: (1) whether the parties have a close relationship; (2) the statement was made after the declarant had been advised of his *Miranda* rights; and (3) there was no evidence that the declarant made the statement in an effort to curry favor with the authorities. *Id.* at 348.

The Tenth Circuit has noted that "[t]he structure of the sentence and its wording [requiring corroborating circumstances] demonstrate the obvious suspicion with which the drafters of the Rule regarded a statement exposing 'the declarant to criminal liability' but exculpating the accused." *Salvador*, 820 F.2d at 561. "[T]he burden is put upon the accused to justify admission of the exculpatory statement by showing 'corroborating circumstances' that indicates the trustworthiness of the statement." *Id*. Further, "the inference of trustworthiness from the 'corroborating circumstances' must be strong, not merely allowable." *Id*. This is "'not an insignificant hurdle.'" *Id*. (quotation omitted). Indeed, corroboration is required for this type of statement, but not for the other statements against interest. *Id*. "The determination of the sufficiency of such corroborating evidence 'lies within the sound discretion of the trial court, which is aptly situated to weigh the reliability of the circumstances surrounding the declaration.'" *Spring*, 80 F.3d at 1461 (quoting *Porter,* 881 F.2d at 883).

In *Spring*, the Tenth Circuit held that the district court did not err in refusing to admit the defendant's statements under this exception when he "was very vague about his involvement in the robbery", "provided *no* information one would expect from someone who was 'involved' in the robbery", made a bald assertion that someone else (Mr. Spring) did not commit the robbery which was otherwise unsubstantiated, there was contradicting evidence to what the defendant said, and the defendant "offered absolutely no *specific* information exculpating Mr. Spring and inculpating himself". *Spring*, 80 F.3d at 1461.

*Sandoval* held that the district court did not err in refusing to admit statements when "the circumstances did not clearly corroborate either Guzman's trustworthiness or the truth of his statement." *Id.*, 820 F.2d at 862. "Guzman was not clearly trustworthy since he knew Oscar and may have had reason to lie for him", "he did not make the statement spontaneously", "he made the statement to the prosecutor, who was in a position to affect the charges against Oscar" and "Guzman apparently had only an informal plea agreement rather than a formal cooperation agreement and thus was less likely to be hurt by telling a lie." *Id.* As to the truth of the statement, the court noted that it was in direct opposition to other evidence in the record. *Id.*[4]

I also note that this Rule applies "'only to those declarations or remarks within the confession that are individually self-inculpatory.'" *Price*, 134 F.3d at 346-47 (quoting *Williamson v. United States*, 512 U.S. 594 (1994)). Thus, the Supreme Court adopted a narrow definition of the word "statement" for the purposes of Rule 804(b)(3). *Id.* at 346. "Collateral statements, even ones neutral as to interest, should be treated the same as other hearsay statements that are generally not admissible." *Id.* at 347. "Collateral statements may not be admissible based on their proximity to self-

---

[4] Other relevant cases include *Turpin v. Kassulke*, 26 F.3d 1392, 1398 (6th Cir. 1994) (statement not admissible under this Rule when it was made to avoid criminal liability, statements were "ripe with fabrications that [defendant] hoped would minimize her criminal liability" and the statements changed dramatically over the course of the investigation); *United States v. Groce*, 999 F.2d 1189, 1191 (7th Cir. 1993) (statement not sufficiently trustworthy when the declarant gave several conflicting statements, he may have changed his story out of fear, and he later recanted the version favorable to the defense); *cf. United States v. Price*, 134 F.3d 340, 348 (6th Cir. 1998) (sufficient corroborating circumstances existed to admit statements against interest when there was no evidence that the declarant had any interest in exonerating Price as the men were not friends, the statement was made voluntarily after being advised of his Miranda rights, and there is no evidence that the declarant made the statements in an attempt to curry favor with the authorities); and *United States v. Lopez*, 777 F.2d 543 (10th Cir. 1985) (statements against interest were admissible where there was evidence presented at trial that sufficiently corroborated the declarant's statement).

inculpatory ones." *Id.* As the Supreme Court noted, "[t]he district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." *Williamson*, 512 U.S. at 600-01.

Based on the foregoing, while I find that William Sablan did make statements against interest to Agent Veltman, he also made collateral statements which are not admissible under this Rule. These included the statements that William was sleeping when the victim attacked him, that Mr. Estrella kicked him in the head, that he called to Rudy Sablan for help but Rudy did not respond, and that William was worried that Joey Estrella was affiliated with a Mexican gang in prison. I also find that the statement that Rudy Sablan did not participate in the killing does not constitute a statement against interest within the meaning of this Rule. *See Price*, 134 F.3d at 347; *United States v. Vegas*, 27 F.3d 773, 782 (2nd Cir.) ("[w]e see no error in the district court's ruling that the portions of Vegas's statements which tended to exonerate Virella were not admissible under Rule 804. Regardless whether other portions of Vegas's statements were against his penal interest, the party by which Vegas sought to exonerate Virella and Guzman was not . . . ."), *cert. denied*, 513 U.S. 911 (1994).

I now turn to the statements which were against William Sablan's interest. These include the statements that after Mr. Estrella attacked him, William Sablan forced Mr. Estrella to the floor and choked him until he was still; that William felt that if he did not kill the victim, he would be killed by him or members of his gang; that William used a razor to cut Mr. Estrella's throat, "went crazy and gutted him like a pig to make

sure he was dead," and then removed the victim's organs "to be completely sure he was dead"; and that he was sorry for what he did but would rather die by injection than be killed by an inmate in prison.

I find that these statements are not admissible under Rule 804(b)(3). First, I agree with the Government that it is questionable whether Defendant can show that the first element is satisfied—the unavailability of William Sablan. William Sablan's trial is over, he has been sentenced, there was no appeal, and he may be subpoenaed to testify. However, should William Sablan not testify or somehow attempt to invoke his Fifth Amendment privilege once subpoenaed, this element would then arguably be satisfied. *See United States v. Savoca*, 335 F. Supp. 2d 385, 390 (S.D.N.Y. 2004) ("the 'unavailability' component is established by the fact that . . . Savoca is expected to invoke his Fifth Amendment privilege, making him 'unavailable' as defined by Rule 804(a)(1) . . . . A witness need not be physically brought into court to assert his or her Fifth Amendment privilege; the government's representation that the pleading defendant's lawyer has been contacted and that such attorney stated that his client would assert the Fifth Amendment privilege is sufficient").

I now turn to the more troubling aspect of this Rule—whether Defendant has shown that there are sufficient corroborating circumstances that make William Sablan's statements against interest sufficiently trustworthy. First, as in *Sandoval*, William Sablan knew Rudy (and was even related to him) and thus may have had a motive to lie for him. Second, William Sablan made the statements to FBI agents who were in a position to decide whether and who to prosecute. William Sablan's statements, while

inculpatory, also support an argument that William was claiming self-defense. This could be viewed as trying to curry favor with the authorities on this issue. Third, William Sablan's statements changed over time (he made statements in which he implicated Rudy and also made statements where he implicated himself and not Rudy). Fourth, William Sablan's statements contradict some of the evidence in this case. For example, the fact that witnesses saw Rudy Sablan strangling Mr. Estrella is inconsistent with William's statements that Rudy was not involved. Further, the statement that William Sablan choked Mr. Estrella is inconsistent with evidence that does not support a choking.

        4.    <u>Rule 807</u>

Rule 807 states, "A statement not specifically covered by Rule 803 or 804 but having equivalent circumstantial guarantees of trustworthiness, is not excluded by the hearsay rule, if the court determines that (A) the statement is offered as evidence of a material fact; (B) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (C) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement will not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it . . . ." FED. R. EVID. 807.

A party seeking to admit a statement under Rule 807 must show that each of the requirements of the rule is met. Rule 807 "permits admission of hearsay if (i) it is particularly trustworthy; (ii) it bears on a material fact; (iii) it is the most probative evidence addressing that fact; (iv) its admission is consistent with the rules of evidence and advances the interests of justice; and (v) its proffer follows adequate notice to the adverse party". *United States v. Bryce*, 208 F.3d 346, 350 (2nd Cir. 1999); *see also United States v. Hall*, 165 F.3d 1095, 1110 (5th Cir. 1999). Obviously, the rule, as a residual exception, should be used sparingly and only if the evidence clearly meets all the requirements for admission. Further, it has been held that the court should not admit a statement under this Rule unless the government can show that the witness is truly "unavailable" and that his or her statement bears sufficient indicia of reliability. *See United States v. Torrez-Ortega*, 184 F.3d 1128, 1135 (10th Cir. 1999); *United States v. Matthews*, 20 F.3d 538, 544 (2nd Cir. 1994). Otherwise, the Confrontation Clause would be violated. *Id.*

In this case, I find that William Sablan's statements should not be admitted under this Rule. First, as indicated earlier, William Sablan does not appear to be unavailable. His trial is over and he can arguably be subpoenaed. Second, I find that William's statements were not attended with sufficient guarantees of trustworthiness for the same reasons discussed above in connection with the Rule 804(b)(3) analysis.

    5.    Res Gestae

Finally, I agree with the Government that Defendant's attempt to use *res gestae* is improper. The *res gestae* doctrine permits admission of evidence of acts that are

"inextricably intertwined" or intrinsically related to the charged offenses. This doctrine is an exception to Fed. R. Evid. 404(b) and does not in any way implicate the hearsay rules. In other words, I agree with the Government that this method of admitting evidence does not circumvent the hearsay rules. Further, as to the hearsay rules, *res gestae* has been subsumed into the excited utterance exception under Rule 803(3), previously discussed. *See United States v. Ledford*, 443 F.3d 702, 710 (10th Cir. 2005) (referring to the excited utterance exception to hearsay as "res gestae"). Based on the foregoing, I find that these statements are not admissible, and deny Defendant's Motion in Limine Regarding Statements of William Sablan as to said statements.

### 6. May 2000 Statements

Defendant's motion also objects to the admissibility of statements made by William Sablan in May 2000. Specifically, William Sablan requested a meeting with a prosecutor in May 2000. He was interviewed by Special Agent Daniell on May 16, 2000, and made statements at that time. William Sablan was interviewed again on May 25, 2000, and made further statements. Rudy Sablan contends that these statements are hearsay and violate his right to confront and cross-examine the witnesses against him. The Government did not brief this issue nor was it addressed at the hearing.

I agree with Defendant that these statements by William Sablan are testimonial in nature as they were given to law enforcement. Accordingly, these statements are subject to *Crawford* and will not be admitted unless the Government can show that the requirements for admission of such testimonial evidence are satisfied. Defendant's

Motion in Limine Regarding Statements of William Sablan is thus granted as to these May 2000 statements.

G.     <u>Defendant's Notice and Motion to Admit Evidence Under FRE 807</u>

Rudy Sablan's Notice and Motion to Admit Evidence Under FRE 807 and the supplement thereto moves for the admission of two letters written by William Sablan. The letters are a letter dated October 20, 1999, written to William's mother and a letter dated April 7, 2000, written to "Uncle Jack". Defendant argues that these letters are admissible under FED. R. EVID. 803(3) (then existing mental, emotional condition), 804(b)(3) (statement against interest) and 807 (residual exception). Defendant asserts that the letters show that William Sablan was solely responsible for the death of Mr. Estrella. Defendant argues that he is entitled to establish his innocence by showing that the crime was committed by another person, and asserts his rights under the Fifth, Sixth, and Eighth Amendments to the Constitution.

In the supplement filed October 12, 2007, Defendant argues that the letters were offered by the Government during William Sablan's trial (as Exhibits 122 and 123). The Government used the letters, not only to argue for a murder conviction but to suggest that William Sablan should be put to death. Defendant argues that the Government, having vouched for their reliability in William Sablan's trial, cannot now claim that they are unreliable and inadmissible in Rudy Sablan's trial. Thus, Defendant claims that both letters should be admitted in his trial.

Turning to my analysis, I agree with the Government that the fact these letters were admitted in William Sablan's trial does not mean that they are necessarily

admissible in this case. The letters in William's case were admissions against a party opponent and admissible under FED. R. EVID. 801(d)(2). As such, they were not hearsay. In this case, the letters are hearsay. Thus, Rudy Sablan has to show that the statements are admissible under the hearsay rules. Defendant seeks to admit the letters under FED. R. EVID. 803(3), 804(b)(3) and 807. I incorporate the detailed legal analysis of these rules and their requirements discussed above in connection with Defendant's Motion in Limine to Admit Statements of William Sablan.

I first address Rule 803(3), which provides a hearsay exception related to statements of "then existing mental, emotional, or physical condition." In this case, while the letters contain some statements of then existing mental and physical condition (William Sablan's letter to his mother says he was scared and hurt—explaining his then existing mental and physical condition, the majority of the letter addresses what William did and why he did what he did). Thus, the vast majority of the letter would not be admissible under Rule 803(3), as the statements are primarily statements of memory or belief. The same is true as to the letter to "Uncle Jack". Further, I do not see how it would be possible to redact the letters in a way that would only include admissible statements. Accordingly, I find that the letters are not admissible under this Rule.

I now turn to Rule 804(b)(3), the hearsay exception which relates to "statements against interest." As stated previously, "[a] defendant seeking to admit hearsay evidence under Rule 804(b)(3) to exculpate himself must show '(1) an unavailable declarant; (2) a statement against penal interest; and (3) sufficient corroboration to

indicate the trustworthiness of the statement.'" *Spring*, 80 F.3d at 1460 (quotation omitted).

I first address whether William Sablan is unavailable. Defendant has not shown to date that William Sablan is unavailable. However, as indicated previously, if William Sablan refuses to testify in this matter, Defendant may be able to meet this requirement. Thus, I turn to the second requirement—whether the letters contain statements against interest. The letters do contain a number of statements against interest. They also contain collateral statements that are not admissible under this Rule.

Finally, I address whether Defendant can show that there are sufficient corroborating circumstances that make these statements sufficiently trustworthy. I find most trustworthy the letter written to William Sablan's mother. It was written to one of William's closest relatives, *i.e.*, his mother, as compared to a law enforcement officer who is investigating the case as to whether to prosecute. It is logical that if William Sablan really was involved in the homicide, he would want to explain to his mother why he did what he did. While William arguably knew or should have known that this letter would be read by law enforcement, there is no indication that he was trying to obtain some favor with law enforcement from this letter. Indeed, the letter is rather graphic in describing William Sablan's role in the murder, the fact that he committed the killing, and the fact that he knew he would probably be sentenced to death in connection with same. The detailed nature of the letter makes it more trustworthy. *See Spring*, 80 F.3d at 1461.

Further, the letter to William's mother was written shortly after the homicide of Mr. Estrella (nine days thereafter, on October 20, 1999). While William Sablan certainly had time to reflect on the homicide during that nine day frame, it was written relatively close to the incident at issue. Finally, while some details in the letter may not be consistent with the evidence (*i.e.*, that William choked Mr. Estrella to death), the vast majority of the statements in the letters are arguably consistent with the evidence (*i.e.*, that Mr. Estrella was the aggressor, that Mr. Estrella was drunk, the details of William's history with his daughter and the cutting of William's head, that William took a razor blade and cut Mr. Estrella's neck, that he gutted him like a pig, etc.).

I find, from the foregoing, that the statements against interest in the letter to William Sablan's mother are admissible as they meet the requirements for admission under Rule 804(b)(3). Accordingly, Defendant's Notice and Motion to Admit Evidence Pursuant to FRE 807 is granted to the extent it seeks to admit this letter. I also find, however, that unless the parties agree otherwise, the letter should be redacted to take out collateral statements unrelated to the statements against interest. The parties are ordered to meet and confer on the issue of redaction.[5]

However, I find that the letter to William's "Uncle Jack" is not admissible. I find that this letter is not sufficiently trustworthy to be admissible under either Rule 804(b)(3) or 807. First, it is unclear who "Uncle Jack" is or how close of a relationship that William Sablan had with him. Further, the letter is largely illegible. Most

_____

[5] Since I found that the letter to William Sablan's mother is admissible under Rule 804(b)(3), I need not address Rule 807 as to that letter.

-50-

importantly, the letter was written many months after the murder, and after William Sablan had ample time to reflect on the murder and to be cognizant of the risks facing him from a law enforcement perspective. Accordingly, Defendant's Notice and Motion to Admit Evidence Pursuant to FRE 807 is denied to the extent it seeks to admit this letter.

   H. <u>Jury Selection Protocols</u>

   The Jury Notice to be sent by the Court to prospective jurors was approved as modified. The dates set forth in the Jury Notice were approved.

III. <u>CONCLUSION</u>

   Based upon the foregoing, it is

   ORDERED that Defendant Rudy Sablan's Motion for Hearing Regarding Procedure for Review and Release of William Sablan's Mental Health Material (R-49, docket # 1671 filed February 6, 2006) is **DENIED AS MOOT**. It is

   FURTHER ORDERED that Defendant Rudy Sablan's Motion for Full Complement of Peremptory Challenges (docket # 248 filed August 17, 2001) is **DENIED AS MOOT**. It is

   FURTHER ORDERED that the Government's Motion to Amend the Third Amended Notice of Intent to Seek the Death Penalty for Rudy Sablan (# 2635 filed October 12, 2007), is **GRANTED**. The Fourth Amended Notice of Intent to Seek the Death Penalty submitted by the Government on December 2, 2007, was approved and has now been filed with the Court. It is

FURTHER ORDERED that the Government's Motion to Reconsider *Crawford* Ruling of February 26, 2007 (docket # 2636 filed October 12, 2007) is **DENIED**.  It is

FURTHER ORDERED that Defendant Rudy Sablan's Motion in Limine Regarding Convictions and Exhibits Alleged in Support of Non-Statutory Aggravating Factor of Future Dangerousness (R-53, docket # 1701 filed February 21, 2006), which was deferred in part in my Order of July 6, 2006, is **GRANTED IN PART, DENIED IN PART, AND DEFERRED IN PART** as set forth in this Order.  It is

FURTHER ORDERED that Defendant's Motion in Limine to Admit Evidence of Character and Habit Regarding Joey Estrella (R-15, docket # 254 filed August 17, 2001) is **GRANTED IN PART AND DENIED IN PART** as stated in this Order.  It is

FURTHER ORDERED that Defendant's Motion in Limine to Admit Evidence of Defendant's Mental Condition (R-18, docket # 257 filed August 17, 2001) is **DENIED AS MOOT** in light of the filing of the Government's Motion in Limine Re: Testimony of Dr. David Lovejoy.  The issues regarding the admissibility of evidence as to William Sablan's mental condition will be addressed in connection with the Government's motion.  It is

FURTHER ORDERED that Defendant's Motion in Limine Regarding Statements of William Sablan (R-17, docket # 256 filed August 17, 2001) is **GRANTED IN PART, DENIED AS MOOT IN PART, AND DENIED IN PART**.  It is

FURTHER ORDERED that Defendant's Notice and Motion to Admit Evidence Under F.R.E. 807 (R-20, docket # 259 filed August 17, 2001) is **GRANTED IN PART AND DENIED IN PART**.

Dated:  March 13, 2008

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge